IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

TALK RADIO NETWORK ENTERPRISES
et al.,

       Plaintiffs,

v.

CUMULUS MEDIA et al.,

       Defendants.

Civ. No. 1:16-cv-00609-CL

**REPORT
& RECOMMENDATION**
*Filed Under Seal*

CLARKE, Magistrate Judge.

Defendants Cumulus Media, Inc.; Westwood One, Inc.; Compass Media Networks, LLC; Compass Media Marketing; WYD Management LLC; WYM Management LLC; Lewis Dickey; and Charles Steinhauer move to dismiss all claims. Dckt. #32. Oral argument was held on August 18, 2016. Plaintiffs withdrew their claim under California Business and Professional Code § 17200 (Claim Thirteen).  The Court reserves ruling on Defendants' Motion to Transfer Venue (Dckt. #33) until after ruling on the present Motion to Dismiss. Dckt. # 37.

For the reasons below, Defendants' motion to dismiss the antitrust and related claims (Nos. 1, 2, 3, 4, 5, 6, and 12) should be GRANTED. Defendants' motion as to claims 7, 8, 9, 10, 11, 14, and 15 should be GRANTED with leave to replead.

Page 1 – **REPORT & RECOMMENDATION**

## PRELIMINARY MATTERS

Defendants filed a Request for Judicial Notice. Dckt. # 16. They ask the Court to take notice of the pleading papers, judicial docket, dismissal order, and settlement agreement associated with earlier litigation between the parties, as well various corporate disclosure statements. *Id.* at 5-6. Fed. R. Evid. 201 instructs that the Court may take judicial notice of a fact "not subject to reasonable dispute." It may take notice of pleadings so far as they are a matter of public record; this includes notice of another court's opinion which is, again, "not for the truth of the facts recited therein, but for the existence of the opinion." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2009). Notice of these items does not convert a motion to dismiss to one of summary judgment. *Id.* at 698. Plaintiffs do not contest the request. The Court grants it.

## BACKGROUND

Plaintiffs produce nationally syndicated talk radio shows under a variety of production enterprises. A related corporate family has over the years included Talk Radio Network Enterprises LLC; America's Talk Network, Inc.; America's Lifestyle Radio Network, Inc.; Talk Radio Network, Inc.; the Original Talk Radio Network, Inc.; Talk Radio Network Entertainment, Inc.; Talk Radio Network – FM, Inc.; America's Radio News Network, Inc.; and Talk Radio Network Operations, Inc. America's Radio News Network is registered in Nevada; all other enterprises are registered at 225 NE Hillcrest Drive, Grants Pass, Oregon 97526.

Defendants are a coalition of associated broadcast media groups formed by mergers and acquisitions. Dial Global acquired Jones Media Group and its entities in 2008. It merged with Westwood in August 2011. The Cumulus Media Group acquired Westwood in December 2013.

Plaintiff entities Talk Radio Network Enterprises ("TRNE"), Talk Radio Network Enterprises Entertainment ("TRNE-ENT"), and two of the other production entities noted above filed suit against Dial and other media groups in 2012 in the U.S. District Court for the Central District of California. The operative second amended complaint was filed on January 23, 2013 ("2013 Complaint"). Def.'s Req. Judicial Notice, Ex. B (Dckt. #16). The 2013 Complaint alleged numerous antitrust and unfair competition violations, with associated state law breach of contract, breach of fiduciary duty, tortious interference with contract and business relations, and unjust enrichment claims. *Id.* The Central District of California transferred the matter to the Southern District of New York on May 24, 2013. *Id.*, Ex. A, p. 12 (showing S.D.N.Y. docket sheet); Decl. Steinhauser, Ex. 1, p. 1 (Dckt. #33-1) (showing the May 17, 2013, Opinion and Order, captioned "Civil Minutes").

On February 28, 2014, the parties executed a settlement agreement. Decl. Steinhauser, Ex. 1 (Dckt. #33-1); Decl. Dickey, Ex. 1 (Dckt. #33-2). The parties also executed a second contract on February 28, 2014. Decl. Steinhauser, Ex. A; Decl. Dickey, Ex. A. Titled "sales representation agreement," and referred to as an "ad-rep agreement," it sets out terms between Defendant Westwood One ("Westwood") and Plaintiff TRNE. It does not refer to other named plaintiffs. Here, TRNE engaged Westwood as "principal sales representative" to sell "all advertising contained" in its talk radio programs. *Id.*

The Southern District of New York entered a final judgment on March 14, 2014, dismissing the matter with prejudice. Def.'s Req. Judicial Notice, Ex. A, p. 30 (Dckt. 16). The February 28, 2014, ad-rep agreement had a twenty-four-month term, which expired on February 28, 2016. Plaintiffs filed the present Complaint on April 11, 2016. Dckt. #1.

Additional facts related to particular claims are discussed below.

## STANDARDS

To survive a motion to dismiss for failure to state a claim, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It must contain sufficient factual plausibility to allow the court to draw a reasonable inference that defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. Conclusions are not entitled to presumptions of truth, *id.* at 679, and formulaic recitation of the elements of a claim are insufficient. *Id.* at 681. However, the Court may dismiss the matter "only where there is no cognizable legal theory" or there is an "absence of sufficient factual matter to state a facially plausible claim for relief." *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Evaluating pleading is a "context-specific task" that requires the reviewing court to draw upon experience and common sense. *Iqbal*, 556 U.S. at 679.

## DISCUSSION

### I.     Antitrust and Competition Claims

The Complaint alleges four monopoly claims under §§ 1 and 2 of the Sherman Act (Claims 1-4), two merger claims under §§ 7 and 15 of the Clayton Act (Claims 5-6), and violation of an unspecified section of the Cartwright Act (Claim 12). Defendants move to dismiss these claims on the basis that each was addressed in the earlier litigation, and therefore precluded.

#### A. Claim Preclusion

Claim preclusion, or res judicata, principles bar this Court from rehearing matters previously litigated. This includes matters that were raised "or *could have been raised*" in a prior action. *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)) (emphasis original). Claim preclusion

applies "when there is '(1) an identity of claims; (2) final judgment on the merits; and (3) identity or privity between parties.'" *Id.* Barring dismissal for lack of jurisdiction, improper venue, or failure to join a party, a court's dismissal is a final adjudication on the merits. Fed. R. Civ. P. 41(b); *see also Stewart*, 297 F.3d at 956.

### 1. Final Judgment

The Southern District of New York dismissed the earlier suit pursuant to Fed. R. Civ. P. 41(a)(1)(A)(iii), with prejudice, on March 14, 2014. Plaintiffs assert that the previous litigation was resolved by settlement agreement, "not an adverse verdict on the merits," and is therefore not subject to claim preclusion. Pl.'s Resp., 8. Dismissal with prejudice pursuant to a settlement agreement constitutes a final judgment on the merits and precludes parties from reasserting the same claims in a subsequent action. *Int'l Brotherhood of Operating Eng'rs – Emp'rs Const. Indus. Pension, Welfare and Training Trust Funds v. Karr*, 994 F.2d 1426, 1429 (9th Cir. 1993) (citing *In re Dominelli*, 810 F.2d 313, 316-17 (9th Cir. 1987)). Such dismissal prevents reassertion of the same claim between the same parties. *Id.* The 2014 judgment is therefore final and subject to claim preclusion.

### 2. Party Privity

The operative complaint in earlier litigation ("2013 Complaint") named two of the present plaintiffs, TRNE and TRNE-ENT. 2013 Compl. ¶¶ 6, 8 (Dckt. #16-2). Two additional entities, America's Talk Network, Inc. ("ATN") and America's Lifestyle Radio Network ("ALRN"), are named in the present Complaint. Compl. ¶ 18.

The 2013 Complaint also named as defendants Cumulus Media's direct predecessor, Westwood One, and Westwood One's various predecessors, including Dial Communications groups, the Exclesior groups, Triton and Verge Media groups, and Compass media groups. *Id.* at

Page 5 – **REPORT & RECOMMENDATION**

¶¶ 11-24. Neither party now suggests that these entities are not in direct succession. The additional named defendants, Lewis Dickey and Charles Steinhauer, respectively served as Cumulus and Westwood board and operations management personnel in both 2013 and at present.

Plaintiffs state that "some of" the respective plaintiffs and defendants were named in the prior suit and "some were not." Pl.'s Resp., p. 3. Traditional privity applies to a narrow class of individuals, but the Ninth Circuit has deliberately "expanded the concept to include a broader array of relationships." *Adams v. Cal. Dept. of Health Servs.*, 487 F.3d 684 (9th Cir. 2007) (quoting *Kourtis v. Cameron*, 419 F.3d 989, 986 (9th Cir. 1005) (*rev'd on other grounds*). The necessary elements are now "an identity of interests and adequate representation," as well as a "close relationship, substantial participation, and tactical maneuvering." *Id.*

ATN and ALRN are both registered to the same corporate entity, Rambling Rogue Enterprises, Inc., at the same office. Pls. Request for Judicial Notice, Ex. B, D, E (Dckt. #16-2, 16-4, 16-5). The Court therefore finds ATN and ALRN in sufficient privity with predecessor plaintiffs. The Court also finds Messrs. Steinhauer and Dickey in adequate privity with predecessor defendants because both individuals were directly employed in the same or similar roles at Cumulus and its predecessors. Therefore, all parties are in privity.

### 3. Identity of Claims

The Court looks to four factors in determining whether a prior action involved "the same claim or cause of action." *Cent. Delta Water Agency v. U.S.*, 306 F.3d 938, 954 (9th Cir. 2002). These are:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in

> the two actions; (3) whether the two suits involve infringement of
> the same right; and (4) whether the two suits arise out of the same
> transactional nucleus of facts. The last of these criteria is the most
> important.

*Fund for Animals v. Lujan*, 962 F.2d 1391, 1398 (9th Cir. 2002 (quoting *C.D. Anderson & Co. v. Lemos*, 832 F.2d 1097, 1100 (9th Cir. 1987)).

The antitrust claims articulated in the present Complaint are identical to those stated in the 2013 Complaint. Identical facts pertaining to the merger and acquisition histories of defendant entities are reiterated, relying upon mostly identical language. *See* Compl. ¶¶ 18-55 (Dckt. #1) and 2013 Compl. ¶¶ 27-62 (Dckt. #16-2). The Antitrust claims collectively allege the same conduct, specifically asserting:

(1) Monopoly of the Ad-rep Market (Compl. ¶¶ 82-89; 2013 Compl. ¶¶ 118-125);

(2) Attempted Monopolization of the Ad-rep Market (Compl. ¶¶ 90-95; 2013 Compl. ¶¶ 126-131);

(3) Conspiracy to Monopolize (Compl. ¶¶ 96-104; 2013 Compl. ¶¶ 132-140);

(4) Unlawful Agreements in Restraint of Trade (Compl. ¶¶ 105-113; 2013 Compl. ¶¶ 141-149);

(5) Violation of the Clayton Act – Mergers (Compl. ¶¶ 114-116; 2013 Compl. ¶¶ 150-157);

(6) Violation of the Clayton Act – Injury (Compl. ¶¶ 117-118; 2013 Compl. ¶¶ 150-57);

(7) Violation of the Cartwright Act (Compl. ¶¶ 148-52; 2013 Compl. ¶¶ 197-201).

The Court has carefully compared these pleadings and finds they repeat the same substantive allegations. Plaintiffs do not attempt to distinguish the content and construction of the claims. The Court finds antitrust claims pertaining to the period prior to the March 14, 2014, dismissal barred.

In an effort to bypass claim preclusion, however, Plaintiffs attempt to distinguish their current claims from those in the 2013 Complaint by repeatedly contending that they suffered *new* injury after the March 14, 2014, judgment issued by the Southern District of New York. Pl.'s Resp., p. 3-8. They specifically assert that judgment in a prior case does not allow Defendants' perpetual immunity from suit. *Id.* at 9. While Plaintiffs are correct that new antitrust violations may be alleged after dates covering a prior judgment, Plaintiffs have failed to show *new* antitrust conduct, thus necessitating dismissal of their claims.

As stated, a plaintiff may assert new, or different, antitrust violations after the date covered by an earlier decision or settlement; however, merely asserting that the antitrust activity alleged in the earlier decision or settlement has continued unabated is insufficient to circumvent the principles of claim preclusion. *In Re Dual-Deck Video Cassette Recorder Antitrust Litg.*, 11 F.3d 1460, 1463 (9th Cir. 1993). In *Dual-Deck*, the parties received a final judgment pursuant to Fed. R. Civ. P. 12(b)(6) in 1987. One year later, in 1988, the same plaintiff sued the same defendants for the same antitrust violations. *Id.* at 1462. The Ninth Circuit dismissed the plaintiff's claim. *Id* at 1463. The panel stated that the plaintiff "did not claim that [the] defendants were doing anything different from what they had done before, just that the alleged antitrust activity 'has continued throughout the period sued.'" *Id.* (quoting *Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 517 F.2s 110, 114 (5th Cir. 1975)). Indeed, "[t]he paragraphs alleging the [antitrust] conspiracy include[d] no dates," but simply "incorporated by reference" the paragraphs in the plaintiff's prior complaint. *Id.* Accordingly, the court found that the alleged conduct was not new in any way, but was simply a "continuation of commercial activity pursuant to the old arrangements." *Id.* As such, the court precluded the plaintiff from bringing the same claims in a new lawsuit. *Id.*

Page 8 – **REPORT & RECOMMENDATION**

Plaintiffs have failed to show new antitrust conduct; instead, Plaintiffs allege the very same conduct that gave rise to the 2012 lawsuit. While Plaintiffs' present Complaint alleges injury from conduct occurring after February 28, 2014—specifically alleging that Cumulus and Westwood acquired, maintained, and exercised a monopoly of the ad-rep market after that date, attempted to do so, and conspired to do so—a close reading of the current Complaint and the 2013 Complaint reveals that, much like the plaintiff in *Dual-Deck*, Plaintiffs are simply incorporating the same antitrust activity alleged in their 2013 Complaint into their present Complaint. Compl. ¶¶1-81. Thus, while the Complaint states that the alleged anticompetitive conduct generally began at the time of the Cumulus-Westwood merger, and continued after the parties executed the 2014 ad-rep agreement, Compl. ¶¶ 85, 91-92, 107, it does not point to any differentiating or specific facts describing new conduct or conspiracies, as directed by *Dual Deck*. Further, much like the plaintiff in *Dual-Deck*, whose complaint alleging antitrust conspiracies included no dates, Plaintiffs' conspiracy claim cites an unspecified "time of such actions," Compl. ¶¶ 97, 98, and the Cartwright Act claim makes no reference to any specific time at all. Compl. ¶¶ 14-150. The Court therefore finds that the claims relate to the same acts as those previously litigated, and Plaintiffs' antitrust claims should be dismissed.

## II.    Contract and Tort Claims

### A. Breach of Contract (Claim Seven)

#### 1. Incorporation By Reference

The Complaint asserts that Defendants breached a 2014 contract for advertising representation services. Plaintiffs did not place contractual terms in the Complaint, nor did they attach the contract to it. Defendants now submit a copy of a single contract between Westwood

and one of the four plaintiffs, TRNE, in association with supporting declarations. Steinhauer Decl. Ex. A (Dckt. #33-1); Dickey Decl. Ex. A (Dckt. #33-2) ("2014 ad-rep contract").

Plaintiffs asserted at oral argument that the attached 2014 ad-rep contract cannot now be properly considered under standards pertaining to a motion to dismiss. This is incorrect. While it is established that presenting matters outside the pleadings to the Court, and the Court's subsequent inclusion of them in its determination, converts the matter to one of summary judgment under Fed. R. Civ. P. 56, a motion to dismiss may nonetheless consider material "properly submitted as part of the complaint." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (*cert. denied*) (*rev'd on other grounds*).

A document is not "outside" the complaint if the complaint specifically refers to it and its authenticity is not questioned. *Id.* (citing *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989)). In other words, "when [the] plaintiff fails to introduce a pertinent document as part of his pleading, [the] defendant may introduce the exhibit as part of his motion attacking the pleading." *Id.* (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327, at 762-63 (2d ed. 1990) and *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n.3 (1st Cir. 1993)). The Ninth Circuit directly holds:

> [D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading may be considered on a Rule 12(b)(6) motion to dismiss. Such consideration does "not convert the motion to dismiss into a motion for summary judgment."

*Branch*, 14 F.3d at 454 (quoting *Romani*, 929 F.2d at 879 n.3); *reaffirmed by In Re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (*rev'd on other grounds*). Neither party now disputes the authenticity of the 2014 ad-rep contract. The Court therefore looks to the contract, as appropriate, in evaluating the motion to dismiss Plaintiffs' contract claims.

Page 10 – **REPORT & RECOMMENDATION**

## 2. Choice of Law

The 2014 ad-rep contract states, "This Agreement shall be construed in accordance of the laws of the State of New York, without regard to conflict of law principles." Contract, p. 6 ¶8.5. Defendants acknowledge this provision. Def.'s Mot. to Trans. Venue, p. 2 (Dckt. # 33). Plaintiffs do not respond to the point. *See* Pls. Resp. to Mot. Trans. Venue (Dckt. #31).[1] Both Oregon and New York law follow the principle that the parties may choose the law that is to govern their contracts. *Young v. Mobil Oil Corp.*, 735 P.2d 654, 656 (Or. App. 1987); *A.S. Rampell, Inc. v. Hyster Co.*, 3 N.Y.2d 369 (1957). The elements of breach of contract are essentially the same in Oregon and New York, *see Vesta Corp. v. Amdocs Mgmt. LTD et al.*, 80 F. Supp. 3d 1152, 1158 (D. Or. 2015) (stating that the elements of breach of contract in Oregon and New York are nearly identical), so the Court will apply New York law to Plaintiffs' breach of contract claim.

With respect to Plaintiffs' additional claims for breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, conversion, fraud, and tortious interference—all brought under Oregon law—the parties did not address the issue of which law should apply; however, the Court notes that, in cases that involved similar conflict-of-law provisions, this District has applied the forum state's law to non-contractual claims that are related to the contract. *See id.* at 1162-63 (applying the law of the forum state—Oregon—to non-contractual claims in a case dealing with a similar conflict-of-law provision). Nevertheless, at this stage in the proceedings, the Court need not address the issue of which law to apply to these claims, because the law in New York and Oregon is virtually identical as it pertains to all six claims, and so the Court's choice of law will not affect the outcome of its analysis. Therefore,

---

[1] Docket numbers are out of order.

because the law is largely indistinguishable, and because Plaintiffs brought these claims under Oregon law, the Court will analyze the claims under Oregon law.

### 3. Breach of Contract Pleading

Plaintiffs argue Westwood beached or violated multiple obligations Westwood owed TRNE under the parties' Rep Agreement. Compl. ¶ 120. As an initial point, the Court finds the existence of a contract adequately pleaded between TRNE and Westwood only. The Complaint generally alleges that TRNE acted as an agent for the remaining three plaintiffs, but the 2014 ad-rep contract now before the Court neither includes, indicates, nor cites the remaining three plaintiffs (TRN-ENT, ATN, and ALRN). Dckt. # 33-1.

A breach of contract claim in New York must allege "the existence of a contract, the plaintiff's performance under the contract, the Defendants' breach of that contract, and resulting damages." *JP Morgan Chase v. J.H. Elec. of New York, Inc.*, 69 A.D.3d 802, 893 (N.Y. 2010).

As discussed, TRNE claims that "Westwood has beached or otherwise violated multiple obligations it owes to [it] under the Rep Agreement." Compl. ¶ 120. It generally alleges: (1) underpayment and failure to pay advertising revenues; (2) failure to include TRNE's programming in appropriate advertising bundles and inclusion of them in "less favorable" bundles; (3) failure to pay "other amounts clearly due for advertising revenues of [TRNE] collected by Westwood"; (4) failure to provide accounting and reports regarding revenue collected and disbursements due; (5) failure to use commercially reasonable efforts in performing its duties; and (6) refusal to permit TRNE inspection of its books. *Id.* TRNE does not, however, assert any specific facts regarding payments that were or were not made in breach of this agreement. Nor does it assert specific facts pertaining to record inspection.

Finally, the Complaint fails to point to specific facts showing Defendants failed to make "commercially reasonable" efforts to sell TRNE's programming. The 2014 ad-rep contract states that Westwood "shall use commercially reasonable efforts to sell Advertisements, provided, however, the Parties acknowledge herein that the means, methods, methodologies, and determination made by [Westwood] in providing the services hereunder . . . shall be made in [Westwood's] sole discretion." Contract, p. 2 ¶3.1. The Complaint alleges, generally, that Westwood "failed to perform its ad rep services reasonably," Compl. ¶68, and appears to allege that Westwood directed an unnamed sales representative to decline performance of this duty. *Id.* The Court declines to interpret the contract its use of the term "commercially reasonable," and finds only that an agreement was made that Westwood would attempt sales. Consequently, the Complaint lacks factual assertions plausibly allowing the Court to draw a reasonable inference that Defendants failed to act in a commercially reasonable manner. For all of these reasons, the breach of contract claim should be dismissed.

## B. Implied Covenant (Claim Fifteen)

Under Oregon, an implied covenant of good faith and fair dealing claim requires a contractual obligation between the parties. *Sheets v. F.E. Knight et al.*, 779 P.2d 1000, 1006 (Or. 1989) (internal citations omitted) (*abrogated on other grounds*). As stated, the Complaint satisfies this as it pertains to TRNE only.

TRNE broadly argues that by engaging in the misconduct discussed above,[2] Westwood has breached the covenant of good faith and fair dealing. Compl. ¶ 163. TRNE's broad allegations of misconduct do not rise to the level of specificity required to survive pleading.

---

[2] TRNE does not specify which alleged misconduct violated the duty of good faith and fair dealing; rather, it simply states, "[b]y engaging in the conduct described above, Westwood has breached the implied covenant of good faith and fair dealing owed to Plaintiffs. . . ." Compl. ¶ 163.

TRNE pleads no facts, relying instead upon its "information and belief" that Westwood is manipulating payments contrary to vaguely described industry norms. *See* Compl. ¶¶ 30-36, 62. TRNE must allege more than a theory that Westwood is generally acting in bad faith; such a theory is insufficient even under liberal pleading standards, which require at least enough factual matter to plausibly suggest conduct occurred. *Iqbal*, 556 U.S. at 678. Further, Plaintiffs do not address the matter in their Response. *See* Pls. Resp. The implied covenant claim therefore should be dismissed at this stage.

## C. Unjust Enrichment (Claim Fourteen)

Plaintiffs argue Westwood and Cumulus have been unjustly enriched at Plaintiffs' expense. Compl. ¶159. To adequately plead unjust enrichment, a plaintiff must allege: (1) benefit conferred; (2) awareness by recipient that benefit has been received; and (3) circumstances where "it would be unjust to allow retention of the benefit without requiring the recipient to pay for it." *Edward D. Jones & Co. v. Mishler*, 983 P.2d 1086, 1101 (Or. App. 1999) (citing *Jaqua v. Nike, Inc.*, 865 P.2d 442, 445 (Or. 1993)).

The Complaint states, "Plaintiffs conferred a benefit upon Westwood and Cumulus by permitting Westwood to sell Commercial Inventory for Plaintiffs' programs, and for paying Westwood a commission for that service." Compl. ¶157. It then states that Defendants were aware of their receipt of these benefits, *id.* ¶158, and that "under the circumstances, it would be unjust to allow Westwood and Cumulus to receive those benefits without paying Plaintiffs for them, in full." *Id.* ¶159. The Complaint then refers to "conduct described above." *Id.* ¶ 159.a.

By "conduct described above," Plaintiffs presumably refer to their lengthy discussion addressing "The Market For [sic] Contracted Ad Rep Services." *Id.* at p. 8. There, the Complaint states that Plaintiffs and "other Independent Radio Syndicators generally engage in a barter-type

Page 14 – **REPORT & RECOMMENDATION**

exchange with radio stations" pertaining to program content and advertising sales. Compl. ¶24. The Complaint describes broad industry norms, *id.* at ¶¶ 25-33, with a hypothetical transaction described "by way of example." *Id.* at ¶34. Regarding unjust enrichment, it states "Westwood is not buying Commercial Inventory from the Independent Radio Syndicators, including Plaintiffs, at agreed prices and then reselling that Commercial Inventory to the advertisers . . . ." *Id.* ¶36. And, "Westwood is collecting sales proceeds for the sale of Commercial Inventory as the agent and representative of the syndicators, for the account of the syndicators." *Id.* at ¶37.

The Complaint further states, "Defendants have not been transparent in their allocations" of the above-mentioned sales proceeds. *Id.* at ¶ 62. Defendants, Plaintiffs state, "do not tell Plaintiffs or, to Plaintiffs' knowledge, other Independent Radio Syndicators whose programs are included in an advertising bundle." *Id.* Plaintiffs allege that this is an "improper procedure," which gives Defendants "the opportunity to manipulate payments." *Id.* It concludes that "Plaintiffs are informed [sic] believe, and on that basis allege, that Defendants have taken advantage of their opportunity to manipulate the allocation process by enriching themselves." *Id.* at ¶¶62-63.

This pleading, though lengthy, fails to specify an identifiable benefit conferred that is germane to Plaintiffs. An articulation "by way of example" is not enough. The complaint contains no facts showing either that Westwood actually sold Plaintiffs' inventory, or that Plaintiffs paid a commission for that service prior to such sale. Although "very unlikely" allegations may survive a motion to dismiss, a complaint must state more than a "suspicion" to proceed. *Iqbal*, 556 U.S. at 555-56. The problem here is that, in reviewing a motion to dismiss, the Court cannot presume a bad act from an opportunity to perform a bad act. A pleading must

Page 15 – **REPORT & RECOMMENDATION**

be "plausibly suggesting (not merely consistent with)" behavior to satisfy threshold pleading standards. *Twombley*, 550 U.S. at 557. The claim should therefore be dismissed.

### D. Breach of Fiduciary Duty (Claim Nine)

Plaintiffs maintain that they and Westwood are parties to a fiduciary relationship and that Westwood has breached its fiduciary duties to Plaintiffs. Compl. ¶129. In order to establish a breach of fiduciary duty, a plaintiff must show a special relationship in which the "nature of the parties' relationship itself allows one party to exercise control in the first party's best interests." *Bennett v. Farmers Ins. Co. of Or.*, 26 P.3d 785, 799 (Or. 2001). Here, the Court looks to the type of relationship that exits. *Id.* Defendants argue no fiduciary relationship exists, referring to the contract, which plainly states, "Nothing in this Agreement shall be construed as a teaming, joint venture or any other similar arrangement between the Parties, it being understood and agreed that the relationship of the Parties is that of independent contractors." Def.'s Mot. to Dismiss, p. 25; Contract, p. 6, ¶8.5.

The Court again does not now interpret the contractual provisions in addressing a motion to dismiss. However, because the 2014 ad-rep contract and pleading papers do not establish that the contract pertains to Plaintiffs TRNE-ENT, ATN, and ALRN, Plaintiffs have not established a fiduciary relationship between Westwood and these three Plaintiffs. TRNE, though, has established a contractual relationship with Westwood, has alleged an agency relationship with Westwood, and, additionally, has alleged that Westwood held funds in trust for TRNE as a result of that relationship. This is sufficient basis for claiming the existence of a fiduciary relationship. However, TRNE must still set forth facts plausibly suggesting that Westwood *breached* a fiduciary duty owed to TRNE. *Twombley*, 550 U.S. at 557.

The Complaint alleges Westwood breached its duty because Westwood acted as Plaintiffs' agent in contracting to sell advertising on Plaintiffs' behalf. Compl. ¶129. It refers to advertising revenues Westwood agreed to hold in trust for Plaintiffs, and states that Westwood was in breach by "engaging in the actions hereinabove alleged, to Plaintiffs' detriment and/or to the advantage of Defendants." *Id.* ¶¶ 129-130. Once again, TRNE fails to point to specific facts indicating a breach of Westwood's fiduciary duty. While TRNE argues that Westwood, and other Defendants, have not been transparent in their collection and allocation of sales proceeds, TRNE only argues that this has given Defendants the opportunity to manipulate the allocation process and thus the fiduciary relationship. As stated, however, the Court cannot presume a bad act from an opportunity to perform a bad act; a complaint must state more than a suspicion of wrongdoing. *Iqbal*, 556 U.S. at 555-56. Therefore, TRNE has not set forth concrete facts plausibly suggesting a breach of fiduciary duty, and the claim should be dismissed.

### E. Conversion (Claim Eight)

The Complaint alleges that Defendants collected revenues for Plaintiffs, failed and refused to pay revenues to Plaintiffs, and therefore "have converted funds of Plaintiffs to their personal uses, and conspired between themselves to do so." Compl. ¶ 124. Conversion is an "intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may be justly be required to pay the other the full value of the chattel." *Mustola v. Toddy*, 456 P.2d 1004, 1007 (Or. 1969) (quoting Restatement (Second) of Torts § 222A at 431).

The tort of conversion requires chattel. Money, "under certain circumstances," may become the subject of conversion. *Wood Indust. Corp. v. Neil Rose*, 530 P.2d 1245, 1248 (Or. 1975). But, "there can be no conversion of money, unless it was wrongfully received by the party

Page 17 – **REPORT & RECOMMENDATION**

charged with conversion or unless such party was under obligation to return the specific money to the party claiming it." *Id.* (internal citations omitted).

The facts, as pleaded, are vague. Plaintiffs do not identify sums, approximation of sums, or account holdings to which they claim right of possession under the first element. Plaintiffs do not establish facts supporting Defendants' unauthorized possession of funds beyond the theories discussed above, which the Court finds too amorphous to survive even liberal pleading standards. Therefore, the conversion claim should be dismissed at this stage.

### F. Fraud (Claim Eleven)

Defendants assert Plaintiffs insufficiently pleaded fraud. This claim clearly states that TRNE acts as representative for all plaintiffs. Compl. ¶ 142. Plaintiffs allege that former Cumulus CEO, Lewis Dickey, made representations that Cumulus and its Westwood predecessor had a "desire to start a new leaf for Westwood in its dealing with Independent Radio Syndicators, including Plaintiffs, and in correcting, eliminating and rectifying past unlawful actions of Westwood." *Id.* They also allege that various alleged falsities and misrepresentations were "not known to Plaintiffs at the time TRNE entered into the Rep Agreement for the benefit of all Plaintiffs." *Id.* ¶145.

Fraud claims must be pleaded with particularity, although "malice, intent, knowledge, and other conditions of a person's mind [may] be alleged generally." Fed. R. Civ. P. 9(b); *Iqbal*, 556 U.S. at 688-87. Under Oregon law, a fraud claim must include:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

*Webb v. Clark*, 546 P.2d 1078, 1080 (Or. 1976) (*en banc*).

Plaintiffs claim that Cumulus and Westwood made misrepresentations that were "false, knowing, intentional, and fraudulent." Compl. ¶141. The Court need not accept legal conclusions couched as factual allegation, even in the context of fraud. *Twombley*, 550 U.S. at 555-57. The Complaint states that Mr. Dickey "would ensure prior wrongful conduct . . . would not be repeated," and that revenue allocation under the contract would be "in a fair, proper and correct manner" with "fair and open access" to networked radio stations. Compl. ¶57. The Complaint also alleges that Mr. Dickey represented that Westwood would "pursue aggressive sales on behalf of Plaintiffs and other Independent Radio Syndicators," *id.*, and that Plaintiffs reasonably relied on these collective representations. *Id.* at ¶58.

Mr. Dickey's alleged misrepresentations are promises to take action in the future. Where a plaintiff alleges fraud based on promises to do something in the future, the plaintiff "must prove that [the] defendant either intended not to perform when [the defendant] made the promise[], or that [the defendant] made the promise with reckless disregard for whether [the defendant] could perform." *Commc'ns Grp. v. GTE Mobilnet*, 871 P.2d 502, 504 (Or. App. 1994). "[T]he mere fact of nonperformance" is insufficient. *Id.* at 505.

Plaintiffs' Complaint lacks factual assertions indicating Mr. Dickey intended Westwood not act on his promises, and Plaintiffs do not allege Mr. Dickey made such promises with reckless disregard as to Westwood's ability to perform. Rather, Plaintiffs rely on the mere allegations of nonperformance, which, as stated, are insufficient to state a claim for fraud under such circumstances. Hence, Plaintiffs' fraud claim should be dismissed.

///

///

## G. Tortious Interference (Claim Ten)

Plaintiffs allege that Defendants interfered, and conspired to interfere, with contracts between Plaintiffs and the individuals that hosted Plaintiffs' various talk radio programs. Compl. ¶ 134. This claim does not refer to the ad-rep contract central to the claims examined above. The Court assumes, for the purposes of the present motion to dismiss only, that the contracts between Plaintiffs and the individuals that hosted Plaintiffs' various talk radio programs were executed in Oregon. Therefore, Oregon law applies. A claim in Oregon for intentional interference with economic relations must allege:

> (1) Existence of a professional or business relationship
> (2) intentional interference with that relationship or advantage
> (3) by a third party
> (4) accomplished through improper means or for an improper purpose
> (5) a causal effect between the interference and the harm to the relationship or prospective advantage; and
> (6) damages.

*Allen v. Hall*, 974 P.2d 199, 202 (Or. 1999).[3]

The Court's review of the forty-three page Complaint finds no clear statement of the relationship, contractual or otherwise, that Plaintiffs have with any identifiable talk radio host. While Plaintiffs need not "set out in detail the facts" upon which they base their claim, some factual allegations must be pleaded. *Twombly*, 550 U.S. at 555 n.3 (internal quotations and citations omitted). Because Plaintiffs have provided none, the claim should be dismissed.

///

///

___

[3] New York's formulation is truncated but essentially the same: a sustainable claim for tortious interference with a contractual relation under New York law must establish that (1) a valid contract existed which a third party knew about; (2) the third party intentionally or improperly procured the breach of contract; and (3) the breach resulted in damage to the plaintiff. *Ullmannglass v. Oneida, Ltd.*, 86 A.D.3d 827, 829 (N.Y. 2011) (citing *Clearmont Prop., LLC v. Eisner*, 58 A.D. 3d 1052, 1055 (N.Y. 2009)).

## RECOMMENDATION

For the reasons stated above the Court should GRANT Defendants' motion to dismiss claims 1, 2, 3, 4, 5, 6, and 12 with prejudice.

The Court should GRANT Defendants' motion pertaining to claims 7, 8, 9, 10, 11, 14, and 15 should be GRANTED with leave to replead.

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. FED. R. CIV. P. 72. If objections are filed, any response is due within fourteen (14) days after being served with a copy of the objections. *Id.* Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED this _____ day of September, 2016.

MARK D. CLARKE
United States Magistrate Judge